# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 18-CR-109 (1) |
| | : | |
| v. | : | Judge Timothy S. Black |
| | : | |
| ANDREY SHUKLIN, | : | GOVERNMENT RESPONSE TO |
| | : | DEFENDANT SHUKLIN'S MOTION TO |
| Defendant. | : | MODIFY ORDER OF DETENTION |
| | : | |

The Government submits this response in opposition to Defendant Andrey Shuklin's motion to modify the order of detention issued by United States Magistrate Judge Lurana S. Snow of the Southern District of Florida. *See United States* v. *Andrey Shuklin*, 18-CR-109, Dkt. 48 ("Def. Mot.").

Defendant Andrey Shuklin is the head of the charged RICO conspiracy. The grand jury has charged Defendant Shuklin and eleven others with conspiring to participate in a nationwide-racketeering conspiracy involving a criminal Enterprise that defrauded, extorted, and stole from customers who hired the Enterprise to move their household goods over a five-year period. As charged in the Indictment, throughout the conspiracy Defendant Shuklin owned and operated the criminal Enterprise along with co-defendant Serghei Verlan, who has since fled the country in response to this Indictment and is currently a fugitive fighting extradition in Panama. The serious nature of the charges, the significant penalties attached, and Defendant Shuklin's role as a leader of the conspiracy create a motive to flee. Defendant Shuklin will also likely face deportation upon conviction, which along with his family overseas, frequent international travel, and financial assets, make him a significant flight risk. For these reasons, and others set forth fully below, the Court should deny the Defendant's motion to modify his order of detention.

1

**PROCEDURAL BACKGROUND**

On July 25, 2018, a federal grand jury returned an Indictment charging Defendant Shuklin and eleven other co-defendants with participating in a RICO conspiracy through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). The grand jury found the defendants, along with corporate entities JBR Underground, LLC, United National Moving and Storage, National Relocation Solutions, Independent Van Lines, National Relocation Van Lines, US Relocation Systems, First National Moving and Storage, Public Moving and Storage, Public Moving Services, Smart Relocation Solutions, Presidential Moving Services, Unified Van Lines, and Flagship Van Lines (referred to collectively as "the affiliated companies") constituted a criminal "Enterprise" as defined in 18 U.S.C. § 1961(4), that is, a group of individuals and entities associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce (referred to hereinafter as the "Moving Enterprise"). Dkt. 3 (Indictment). Specifically, the grand jury concluded the defendants conspired to participate in the Moving Enterprise through multiple acts of wire fraud in violation of 18 U.S.C. § 1343; theft from interstate shipments in violation of 18 U.S.C. § 659; extortion in violation of 18 U.S.C. § 1951(a); and fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a). *See id.* ¶ 25.

On July 27, 2018, the day after the grand jury indicted defendants for the RICO conspiracy, this Court entered a post-indictment restraining order. Dkt. 19. The Court determined there was probable cause that the defendants engaged in the charged RICO conspiracy; that there was a connection between the contents of property in seven warehouse locations being used by the Moving Enterprise and the offense charged in the Indictment; and that if the defendants are convicted the property in the seven warehouses would be subject to forfeiture under 18 U.S.C. § 1963. Agents later executed a search warrants at all seven locations and uncovered evidence

relating to the charges. Among the locations searched was 2802 N. 29th Avenue, Hollywood, Florida 33020. Agents also identified approximately 161 customers' goods stored in six of the warehouses. Dkt. 43 ¶ 3 (Motion to Amend Post-Indictment Restraining Order and Return Customer Property).[1]

On July 31, 2018, agents arrested Defendant Shuklin. The Defendant had his Initial Appearance in the Southern District of Florida and was detained pending a detention hearing. Pretrial Services interviewed the Defendant and prepared a report. *See* Pretrial Services Report ("PSR"). The Pretrial Services Report stated, among other things: Shuklin was born in Russia and is 31 years old; he is a lawful permanent resident of the United States; he obtained a Master's Degree in legal jurisdiction in Russia; he entered the United States in 2012, and prior to that he lived in Russia; he maintains a valid Russian passport; in the past ten years, he reported travel to Italy and Spain only; he resides in Florida with his wife, Tatiana Rakhmaninova, who is also a lawful permanent resident, and young daughter; he maintains frequent contact with his mother who resides overseas; and his 12-year-old daughter from a previous relationship resides in Russia. *Id.* at 2-3. In addition, Pretrial Services reported that Shuklin owns a condo for which he owes $200,000 and pays a $1,700 monthly mortgage; and he leases a 2017 Lexus RX350, for which he pays $550 a month. He told Pretrial Services that he works for "Olimpus Ans" (believed to be Olympus A&S), which provides sales consultations within the moving industry and is located at 2802 N. 29th Avenue, Hollywood, Florida 33020, and he earns $6,000 per month. His monthly expenses total $6,000 and he owes $25,000 in credit card debt. Defendant Shuklin reported owning one bank account, a JP Morgan Chase Bank account with a $3,000 balance. He told Pretrial

---

[1] As set forth in the government's motion, Defendant Shuklin consented to the return of the property to customers. Dkt. 43 ¶ 9. The Court ordered that the government may facilitate the return of the household goods to customers. Dkt. 44.

Services that he maintains no other accounts and owns no other assets. Pretrial Services determined that Defendant Shuklin posed a risk of nonappearance based on the offense charged, possession of travel documents, recent travel abroad, and family ties to Russia. *Id*. at 3.

On August 6, 2018, United States Magistrate Judge Lurana S. Snow of the United States District Court for the Southern District of Florida held a detention hearing and ordered the Defendant detained pursuant to 18 U.S.C. § 3142. Judge Snow found "that there are no conditions or combination of conditions which reasonably will assure the Defendant's appearance as required and/or the safety of any other person and the community." Exhibit A at 2 (Case No. 18-mj-06355-LSS, Dkt. 11 (SDFL)). In support, Judge Snow cited the substantial nature of the racketeering offense, including the use of aliases and false identification documents to further the conspiracy, along with Defendant Shuklin's international ties, access to false identification documents, and the substantial prison term he faces if released in deeming Shuklin a flight risk. *Id*. at 1–2.

The Defendant now moves for an order granting him release from detention. His motion should be denied.

## **ARGUMENT**

This Court is empowered to review Judge Snow's order of detention pursuant to Title 18, United States Code, Section 3145(b). This Court reviews the Defendant's motion to modify the order of detention *de novo*. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000). Detention pending trial is necessary where no condition or combination of conditions will reasonably assure either the appearance of the defendant or the safety of the community. 18 U.S.C. § 3142(e). The following factors govern this determination: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community

that the defendant's release would pose. *Id.* § 3142(g); *Yamini*, 91 F. Supp. 2d at 1130. The government may present evidence supporting detention by way of proffer or hearsay, *United States v. Stone*, 608 F.3d 939, 948–49 (6th Cir. 2010); *United States v. Webb*, 238 F.3d 426 (6th Cir. 2000) (table), and must prove risk of flight by a preponderance of the evidence, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

Consistent with Judge Snow's detention order, the government has met its burden here and Defendant Shuklin should remain detained.

**A. Nature and Circumstances of the Offense Charged Support Detention**

Defendant Shuklin has been charged with participating in a nationwide-racketeering Enterprise, which defrauded, extorted, or stole from approximately 1,000 known victims, spanning from 2013 until the Indictment in July 2018. Agents have interviewed close to 100 customers and a number of former employees of the Enterprise, executed numerous search warrants at business locations and warehouses, and reviewed moving documents for hundreds of moves, among other things. This evidence shows, as the grand jury found, the conspiracy generally worked like this:

- The Moving Enterprise would start a moving company that represented itself falsely through emails to customers and representations on their website as a moving company with over a decade of experience and many satisfied customers.

- The Moving Enterprise induced new customers to select its services with a low "binding" moving estimate without conducting an onsite inspection of the goods.

- Despite federal regulations stating binding estimates cannot be changed once movers begin loading, the Moving Enterprise increased the price of binding estimates onsite after household goods were loaded on moving trucks.

- After loading, the Moving Enterprise claimed falsely the goods took up more cubic footage than contemplated in the binding estimate, knowing this claim to be false.

- The after-loading price increase was fraudulent—internal company documents tracking the "real" or "actual" cubic feet in contrast to the cubic feet charged to the customers show the Moving Enterprise charged customers prices based on the cubic

5

- footage used in moves that was higher than the actual cubic footage used in the move.

- The Moving Enterprise told customers that if the inflated price was not paid in full, it would keep the customers' household goods. Agents have spoken with customers who refused to pay the (inflated) revised price and their goods have not been delivered to date; agents also found household goods relating to years-old moves during execution of recent warehouse search warrants.

- The Moving Enterprise at times simply refused to deliver a customer's household goods despite receiving payment as agreed to by the parties.

- Once enough customers complained and/or the U.S. Department of Transportation ("USDOT") placed that affiliated company out of service, the Enterprise "reincarnated" as a new company by submitting false documents to federal regulators and once again misrepresenting the new company's years of service and qualifications to customers. The Enterprise has reincarnated as at least twelve different companies since 2013.

- The Moving Enterprise concealed its identity, the identity of its leadership, and the true nature of its business from customers and regulators. For example, the Enterprise used counterfeit driver's licenses to further the conspiracy for individuals it named as owners of "reincarnated" new companies on regulatory filings. Agents also recovered a list of aliases used by employees that included the actual name of the employee and the fake "Name" or "Sales Name" (*i.e.*, the alias) that the employee used when communicating with customers and federal regulators.

Dkt. 3 (Indictment).

The grand jury also found that Defendant Shuklin and his business partner, co-Defendant Serghei Verlan, coordinated and directed lower-level employees, members, and associates of the affiliated companies. *Id.* ¶ 21. During the relevant period, Defendants Shuklin and Verlan, operated the affiliated companies out of multiple locations throughout the United States, including Florida, Ohio, Maryland, North Carolina, Illinois, Texas, California, Connecticut, Colorado, and Missouri. Shuklin and Verlan operated the Moving Enterprise principally out of a business address in Hollywood, Florida. *Id.* ¶ 22.

6

The racketeering conspiracy is a serious charge, and Defendant Shuklin faces substantial criminal penalties if convicted. The number of victims alone (over 1,000 to date) indicates the loss amount will be substantial. Defendant Shuklin will also face potential sentencing enhancements based on the number of victims, the financial hardship to victims, theft and receipt of stolen property, relocating a fraudulent scheme to evade law enforcement, and being the organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, among other possible enhancements. *See* U.S.S.G. §§ 2B1.1, 3B1.1.

All of these factors—including serious crimes involving fraud and deceit, the length and scope of the conspiracy, and substantial criminal penalties—indicate the Defendant is a significant flight risk. *See United States v. Liebowitz*, 669 F. App'x 603, 605 (2d Cir. 2016) ("The lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee."); *United States v. Baig*, 536 F. App'x 91, 92–93 (2d Cir. 2013) (detention appropriate where "the charges centered around false documentation. As we have said, apparent access to false documents supports a finding that a defendant poses a risk of flight.") (internal citations omitted); *United States v. Soto*, 17-CR-65-TWP-MJD-3, 2017 WL 2838193, at *2–3 (S.D. Ind. July 2, 2017) ("[Defendant] presents a risk of flight . . . [based on] the nature and circumstances of the offenses charged and that the charged criminal conduct spans from 2012 through 2014 (therefore it is not minor or fleeting poor judgment by the Defendant, but rather, significant misconduct over a significant period of time). Moreover, the offenses carry significant penalties of incarceration."); *United States v. Sanchez*, 15-CR-147 (JCC), 2015 WL 3444840, at *3–4 (E.D. Va. May 28, 2015) (detention supported where "[t]he nature of the offense involves fraud, manipulation, and deceit"). The nature and circumstances of the offense thus support detention.

### B. The Weight of the Evidence Against Defendant Shuklin Supports Detention

From its inception, Defendant Shuklin was one of two leaders of the RICO Enterprise. As set forth in the Indictment, the Moving Enterprise has "reincarnated" into at least twelve different affiliated companies, starting with JBR Underground, LLC. An April 24, 2013 amendment to JBR Underground's articles of incorporation listed Defendant Shuklin as a "managing member" of the company. In August 2013, JBR Underground filed a federal regulatory MCS-150 form indicating Defendant Shuklin became an "owner" of JBR Underground. The form was certified by an individual who signed his name only as "Serghei" and who was listed as the "general manager" of JBR Underground. Agent interviews indicate that Verlan negotiated the purchase of JBR Underground from its prior owner, and Shuklin signed the sale documents and provided payment for the purchase.

By September 2013, customers began filing complaints to the USDOT indicating that the company was increasing costs for moves above the binding estimate after household goods were loaded on the moving truck. USDOT documents indicate that JBR Underground was ordered to cease operating as a household goods carrier and placed the company out of service in September 2015. *See* Dkt. 3 ¶ 8. But prior to be ordered out of service, Shuklin and Verlan had already "reincarnated" the Enterprise into at least three different affiliated companies by making misrepresentations on federal regulatory filings. *See id.* ¶¶ 9–12. For example, on June 5, 2014, before JBR Underground was placed out of service, Shuklin filed a federal application with the USDOT for National Relocation Solutions, LLC to operate as a household goods carrier. In doing so, Shuklin certified under penalty of perjury that he did not have any relationship with any other federally-regulated moving entity within the past three years, despite the above-mentioned

USDOT filings that listed Shuklin as the owner of JBR Underground.[2] Wells Fargo bank accounts also listed Shuklin as owner and Verlan as manager of both JBR Underground LLC and National Relocation Solutions LLC, further showing that Shuklin falsely certified his USDOT filing for National Relocation Solutions LLC.

The Moving Enterprise followed a similar pattern over the following years—after receiving complaints from customers and before USDOT could place a particular reincarnated entity out of service, the Enterprise began operating as a new entity, through Shuklin and Verlan. For the first four incarnations of the Enterprise—JBR Underground, National Relocation Solutions, Independent Van Lines, and National Relocation Van Lines—either Shuklin or Verlan signed the OP-1 form, which is now referred to as MCSA-1 form, as "owner" of the company (and in the process lied on USDOT forms about their affiliations with the other companies). In later incarnations, the Moving Enterprise misrepresented to USDOT by listing other individuals as "owners" of new companies on federal-regulatory filings, despite no evidence indicating these individuals actually owned or operated the company. Rather, search warrant returns and grand jury subpoenas to the Florida Departments of Motor Vehicles show that the Moving Enterprise created false identification documents for certain individuals listed as "owners" on federal filings by using the photographs and information of actual employees of the Enterprise to create fake driver's licenses in the names of the fake "owners." Internal company emails show that Shuklin received copies of the fake licenses shortly before they were forwarded to a third-parties company.

Although Shuklin and Verlan kept their names off of federal regulatory filings for new companies, they continued to operate as owners and operators. For example, although Flagship Van Lines did not list its affiliation with Shuklin on the federal application for a USDOT number,

---

[2] Shuklin signed his name "Andrey Skuklin" on the federal OP-1 form.

Flagship Van Lines' application for commercial auto insurance through Progressive Casualty Insurance Co. listed Shuklin as the individual "involved in the daily operation of the business." In addition, in June 2018, agents interviewed a former employee of the Enterprise who stated that within the last month, the Enterprise transitioned from operating as Unified Van Lines to Flagship Van Lines, and Shuklin and Verlan came to the office regularly and were understood by the former employee to be the owners of both Unified Van Lines and Flagship Van Lines. Shuklin is also an authorized signers on bank accounts for the entities that make up the Enterprise. Specifically, agents have found numerous bank accounts in the names of the affiliated companies of the Moving Enterprise; the accounts were used to pay employees of the Enterprise and receive payments from customers from multiple different affiliated companies; and the accounts list Shuklin as an authorized signor on the accounts.

Defendant Shuklin participated directly in the criminal activity set forth in the Indictment. For example, he was involved in numerous email correspondence with warehouse employees showing that victims were being charged purposefully by the Enterprise for more cubic footage than was actually used in moves. These emails detailed the "Real" or "Actual" cubic footage used during moves and then attached documents showing customers were charged based on inflated cubic footage in the revised estimates. A sample of these emails includes:

- On May 26, 2015, an Ohio warehouse employee emailed Tatianna Rakhmaninova (Shuklin's wife) who forwarded to Shuklin an excel spreadsheet that listed "Estimate Cu Ft," "Real Cu Ft," and "BOL Cu Ft," (*i.e*., the "bill of lading" cubic feet) for three customers, indicating the Enterprise was knowingly charging customers for more cubic feet in the bill of lading than the real cubic feet used.

- On August 2, 2015, an Ohio warehouse employee emailed Shuklin, Verlan, and others copies of a National Relocation Solutions customer's documents showing the customer was charged for using 2,177 cubic feet but the email indicated customer only used "Actual space 1,350" cubic feet.

- On May 25, 2016, an Ohio warehouse employee emailed Shuklin stating a First National Moving and Storage customers' goods used "Real space 3300" cubic feet, however, they were charged for using 4,400 cubic feet. These customers never received their household goods.

- On August 3, 2016, a Colorado warehouse employee emailed Shuklin and others stating a First National Moving and Storage customer had used "2300 real cubes" but an attachment to email shows that he was charged in the bill of lading for 2,835 cubic feet.

- On August 22, 2016, an Illinois warehouse employee sent to Shuklin and others an email stating a First National Moving and Storage customer had "Real Space 2300 cf" but an attachment to the email shows the customer was charged for 2,800 cubic feet.

These emails, involving multiple affiliated companies and different warehouse employees throughout the country, show that Shuklin participated directly in the Moving Enterprise's practice of systematically charging customers inflated prices.

The evidence shows Defendant Shuklin was involved substantially in the Moving Enterprise's racketeering conspiracy, which increases his flight risk. *See United States v. Pritchard*, 2008 WL 920434, at *4 (N.D. Ohio Apr. 3, 2008) ("These lengthy sentences coupled with the strong evidence against Defendant serve to increase the flight risk presented by Defendant."); *Soto*, 2017 WL 2838193, at *2–3 (detention appropriate where, "given the weight of the evidence against him, A. Soto may feel as though he has two choices: face the indictment, and if convicted, serve a prison sentence prior to deportation; or flee from the charges."). This factor also supports detention.

**C. History and Characteristics of Defendant Shuklin Support Detention**

Defendant Shuklin's history and characteristics support detention based on flight risk.

*First*, Defendant Shuklin, who is a native of Russia, has international ties and a history of international travel. *See* PSR at 1. He arrived in the United States in March of 2013,[3] leaving his child and his mother behind in Russia. *See id.* at 1-2. He still has a valid Russian passport. *Id.* at 1. Defendant Shuklin maintains that, since he successfully sought asylum in the United States, he has no interest in returning to Russia. That has not stopped him from other international travel— since arriving in the United States, according to records from U.S. Customs and Border Protection, Defendant Shuklin has traveled to Mexico, the Netherlands, France, Canada, Turkey, Italy, and Spain. However, in his interview with Pretrial Services, he reported that, in the last ten years, he had only travelled internationally to Italy and Spain. *See id.* at 1. This is particularly alarming since records show his trips to Mexico, the Netherlands, France, Canada, and Turkey were all within the last year. These international ties and travel support detention, particularly since he lied about his travel to Pretrial Services. *See United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017) ("[S]ignificant ties and travel to foreign countries weighed in favor of a finding that [the defendant] was a flight risk." (internal quotation marks omitted)); *see, e.g.*, *United States v. Herndon*, 1:10MJ89-1, 2010 WL 2607154, at *7 (M.D.N.C. June 10, 2010) ("[T]he defendant has provided and caused the provision of false information to the Pretrial Services Unit and the Court in an effort to secure release. . . . This fact strongly weighs against the defendant's release[.]").

*Second*, his immigration status in this country provides a motive to flee. Defendant Shuklin is a lawful permanent resident in the United States. But the racketeering charges relating to fraud,

---

[3] There are inconsistencies around when Shuklin arrived in the United States. The PSR reports that his initial date of entry into the U.S. was March 6, 2013. PSR at 1. However, Shuklin reported to Pretrial Services that he got married in Aventura, Florida in 2012. *Id.* at 2.

extortion, and theft will make him subject to deportation upon conviction. 8 U.S.C. § 1101(a)(43)(J) (defining "aggravated felony" to include RICO conspiracy). Anyone who is not a U.S. citizen or national who commits an aggravated felony is deportable. 8 U.S.C. §§ 1101(a)(3) (defining "alien"); 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 1158(b)(2), (c)(2) (includes individuals granted asylum); *see also Yeremin v. Holder*, 738 F.3d 708, 714–15 (6th Cir. 2013) (lawful permanent resident deportable under § 1227(a)(2)(A)(i) for crimes involving fraud or deception).

This Circuit has recognized that overseas ties coupled with the likelihood of deportation upon conviction increases a defendant's flight risk substantially. *See United States v. Arhebamen*, 69 F. App'x 683, 684 (6th Cir. 2003) (concluding the risk of nonappearance supported by Indictment and "the defendant's pending immigration proceedings"); *United States v. Khraizat*, No. 00-2128, 2000 WL 1769637, at *2 (6th Cir. Nov. 17, 2000) (agreeing defendant was flight risk because he had family abroad, overseas assets, and "the defendant faces a lengthier sentence if convicted as well as the potential for deportation."). Other courts agree. *See United States v. Acosta-Tavera*, 697 F. App'x 927, 930 (10th Cir. 2017) (defendant's foreign ties and travel "coupled with the high likelihood that the defendant would be unwilling to serve a minimum ten-year sentence and then be deported, supports the court's finding, by a preponderance of the evidence, that the defendant was a flight risk."); *United States v. Mehmood*, 358 F. App'x 767, 769 (8th Cir. 2010) (detention appropriate because of defendant's overseas travel "and his immigration status is in jeopardy if he is convicted in this matter"); *United States v. Neves*, 11 F. App'x 6, 8 (1st Cir. 2001) (detention for flight risk supported by "near-certainty of conviction and subsequent deportation that [defendant] faces"); *Soto*, 2017 WL 2838193, at *2–3 ("If convicted of any of the crimes charged in the Indictment, [the defendant] will likely be deported from the United States.

Circumstances like these demonstrate a heightened flight risk."); *United States v. Nwagbara*, 3:11-CR-0298-L, 2011 WL 6372342, at *4 (N.D. Tex. Dec. 19, 2011) ("The potential of a long sentence of imprisonment and deportation and Defendant's family ties in Nigeria weigh in favor of Defendant's detention"); *United States v. Hernandez,* No. 1:02-CR-006, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) ("[T]he fact that [defendant] is a citizen of Mexico and not a citizen of the United States establishes an increased risk that he might flee to Mexico to avoid the very serious criminal charge pending in this Court."). Defendant Shuklin's Russian ties and likely deportation indicates he is a flight risk.

*Third*, he has the means to flee, despite his contrary representations to Pretrial Services. According to the Pretrial Services, Defendant Shuklin reported a checking account with only $3,000 in it, along with a house with a value he could not recall, as his only assets. PSR at 2 ("No additional assets were reported anywhere in the world.") He also reported significant liabilities, including a $200,000 mortgage balance and $25,000 in credit card debt. *Id*. But Shuklin failed to disclose a second property that he owned, which he listed for sale on August 8, 2018 after his arrest and sold on September 14, 2018 for $175,000. And during the course of this investigation, law enforcement identified at least seven different bank accounts associated with the Moving Enterprise for which Defendant Shuklin (and often his wife, Tatiana Rakhmaninova) were signatories. Contrary to Shuklin's representation to Pretrial Services that his only account is with J.P. Morgan, the accounts were with not only J.P. Morgan Chase, but Bank of America and TD Bank. Review of account activity shows that Defendant Shuklin used those business bank accounts for personal expenses, including payments for his Lexus, payments for Ms. Rakhmaninova's Land Rover, large cash withdrawals, international wire transfers to family overseas, personal residence mortgage payments, among other things. IRS 1099 Forms recovered

during this investigation document that Defendant Shuklin received approximately $292,000 from two entities associated with the Moving Enterprise in 2016 alone. Defendant Shuklin has both the means to flee, and an apparent interest in concealing those means from Pretrial Services. These facts support a finding of detention. *See United States v. Maheshwari*, 358 F. App'x 765, 766–67 (8th Cir. 2010) (detention appropriate given significant amount of cash along with overseas ties and immigration status if convicted); *United States v. Patino*, 18-20451, 2018 WL 4181440, at *1–2 (E.D. Mich. Aug. 31, 2018) (dishonesty weighs against release).

*Fourth*, despite Shuklin's protestations that he was aware of this investigation for over a year yet never fled and thus presents no risk of flight now, his co-defendant's flight is fatal to his case. Both Defendants Shuklin and Serghei Verlan were made aware of this investigation over a year ago – as the leaders of the Moving Enterprise, both were interviewed by agents at the same time. But awareness of an investigation does not provide the same incentive to flee as an indictment with your name on it.[4] It was only upon learning of the arrests and charges in this case that Serghei Verlan avoided law enforcement in Florida, fled the United States to the Bahamas, flew from the Bahamas to Panama City, Panama, and had to be tracked and arrested by Panamanian authorities. Verlan is currently fighting extradition on these charges. Verlan's ability to escape law enforcement and flee abroad supports a finding that Defendant Shuklin is also a risk of flight.

The Defendant states in his motion that he is "amenable to wearing a GPS monitor to alleviate any concern that he is a flight risk." Def. Mot. at 7. But, as the above cases illustrate, where a defendant is a flight risk because he faces a substantial prison sentence followed by deportation, and has overseas ties and the means to flee, electronic monitoring by Pretrial Services

---

[4] The Government is also aware that at least two other defendants are in Russia, and one has expressly refused to return to the United States because of the risk of arrest on these charges.

is insufficient to prevent flight. *See also United States v. Brennerman*, 705 F. App'x 13, 16 (2d Cir. 2017) (agreeing that defendant's "willingness to submit to electronic monitoring and home detention or . . . the fact that certain relatives are willing to act as sureties" insufficient given flight risk supported by overseas ties and fraud-related charges); *Soto*, 2017 WL 2838193, at *2–3 (citing defendant's choice of serving a prison sentence and deportation if convicted and fleeing from the charges in concluding "home detention would not prevent defendant from fleeing"). Thus, consistent with Judge Snow's detention order, the Defendant's motion should be denied.

## CONCLUSION

The Court should deny Defendant Shuklin's motion to modify the order of detention.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney


*/s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
MEGAN GAFFNEY (NY 4849220)
Assistant United States Attorneys
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202
Matthew.singer@usdoj.gov
Megan.gaffney@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court's CM/ECF System this 26th day of September 2018, which provides electronic notice to all parties.

                                      *s/Matthew C. Singer*
                                      MATTHEW C. SINGER (IL 6297632)
                                      Assistant United States Attorney