**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:18CR109 |
| | : | |
| Plaintiff, | : | Judge Black |
| | : | |
| v. | : | |
| | : | |
| Andrey Shuklin, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**REPLY TO RESPONSE ON MOTION FOR BOND AND
REQUEST FOR HEARING**

The United States argues that Mr. Shuklin is a flight risk for various reasons, all of which do not require detention when considering conditions that this Court may impose. The United States first argues that the weight of the evidence requires detention. The United States has the advantage in this argument of a one-sided lengthy investigation. However, Mr. Shuklin has the presumption of innocence. Notably, for much of the time period where the United States alleges Mr. Shuklin was operating a sophisticated fraud and signing false documents, he was new to this country and did not understand English. He did enter the moving business at the behest of co-defendant Serghei Verlan. Mr. Verlan had experience in the moving business. Mr. Verlan spearheaded the creation of a moving company utilizing Mr. Shuklin's money. Mr. Verlan brought in others with experience in the industry. Mr. Shuklin did not understand English at the time, much less how to operate a moving business. Thus, while a complete defense to the charges is not practicable at this point in the process, there are many significant issues for the defense to explore. The nature of the charges (non-violent consumer fraud activity) do not suggest Mr. Shuklin will

flee the country. Rather, Mr. Shuklin intends to work with his attorneys to challenge many issues that the United States has mischaracterized or misunderstood.

The United States also suggests that Mr. Shuklin is likely to be deported if convicted of a RICO conspiracy. First, the United States is a long way from obtaining a conviction for a RICO conspiracy against Mr. Shuklin. Second, while a RICO conspiracy is likely an "aggravated felony," the likelihood of deportation is far more complicated than the United States suggests. Counsel has consulted with an immigration attorney already. Mr. Shuklin's status as someone who was granted asylum, and who has already obtained permanent resident status, makes the deportation issue complicated.

The United States cites to cases involving defendants with overseas ties. Specifically, the United States continues to assert that Mr. Shuklin's "Russian ties" indicate that he is a flight risk. (Response to Bond Motion, R. 59, Page ID # 424). However, this argument is essentially neutralized by the simple fact that Mr. Shuklin cannot return to Russia as described in his Motion for Bond. Furthermore, while it is true that Mr. Shuklin has traveled internationally in the past year, while the investigation was ongoing, it is also true that he returned home each time. Notably, whenever he traveled, he used his passport—a passport he will willingly turn over to the clerk's office, which will preclude him from traveling abroad even if he wanted to.

The United States also mentions fake documents associated with the conspiracy. Importantly, the United States alleges that there were emails where Mr. Shuklin was made aware of "copies" of fake driver's licenses before they were forwarded to third parties. Even if this is true, observing a photocopy of an alleged fake driver's license is a far cry from having the ability to create a fake passport allowing international travel. A photocopy of an alleged fake driver's license involves less work and sophistication than a high school

2

student creating an actual (non-photocopy) fake ID. In any event, there is no evidence to suggest Mr. Shuklin has the means or will to create a fake passport, which is what the United States appears to be implying.

The United States' final assertion is that Mr. Verlan's apparent flight to Panama is somehow "fatal" to Mr. Shuklin's request to be released. Indeed, Mr. Verlan was also aware of the investigation for over a year like Mr. Shuklin. That is where the similarities end. Mr. Verlan did not obtain counsel immediately who then contacted the United States' attorneys. Mr. Verlan was the overarching leader of the moving enterprise both at its inception and throughout the years. Mr. Verlan is not from Russia, but rather Moldova. He does not have political asylum in the United States, and he is not a lawful permanent resident. He could easily return to Moldova, in stark contrast to Mr. Shulkin's inability to return to Russia. Mr. Verlan had a passport when arrested whereas Mr. Shuklin will not have a passport upon his release. Mr. Verlan does not have a home or family in the United States. Further, upon information and belief, Mr. Verlan was "on the run" even before agents began arresting alleged members of the conspiracy. None of this applies to Mr. Shuklin.

Mr. Shuklin has previously provided this Court with a description of his character as it relates to why he should be released. In addition, counsel would note that Mr. Shuklin has gone beyond simply consenting to the release of customers' goods. Mr. Shuklin and counsel have engaged in active assistance to the government in returning customers' goods. To that end, counsel has forwarded helpful information to the United States involving organizational systems at one particular warehouse. Mr. Shuklin will remain available to help, and perhaps may be able to assist to a greater degree, upon release. Mr. Shuklin has made clear to counsel that any assistance provided is not being done for a *quid*

3

*pro quo* (such as he would help only if he could get a bond). Thus, counsel does not mention his assistance as argument to release Mr. Shuklin so he can help in the process of returning customers' belongings. Counsel only mentions it as it relates to Mr. Shuklin's character.

Finally, Mr. Shuklin has a young child with his wife. Nothing is more important to him than returning home to help his family. Mr. Shuklin's daughter requires specialized treatment for a genetic condition called infantile hemangiomas. According to Everyday Health, "Hemangiomas are caused by blood vessels grouping together in an abnormal way. These blood vessels form benign (non-cancerous) growths that can develop into ulcers or red marks on the skin. Hemangiomas can also cause more serious complications inside the body (in the liver, brain, or digestive system)." (https://www.everydayhealth.com/drugs/hemangeol). Mr. Shuklin's daughter requires a medicine called hemangeol, which an infant cannot suddenly stop taking. The Shuklin family sees a specialist for their daughter's condition and they are very much committed to continuing their daughter's case with the specific specialist.

Thus, the flight risk the government proposes involves Mr. Shuklin having the ability to evade a GPS ankle monitor, the will to leave behind the country that is now his home, the character to either leave his infant daughter and wife or take his daughter with him thereby seriously risking her health, and the ability to create fake passports. None of this is realistic.

For the foregoing reasons and those articulated in the Motion for Bond, Andrey Shuklin respectfully moves this Court to order that he be released pretrial with any conditions that this Court deems appropriate, including the surrender of his passport

4

along with his wife's and child's passports. Mr. Shuklin respectfully requests that this Court set an immediate court date to hear this motion.

                    **/s/ Martin S. Pinales**
MARTIN S. PINALES (0024570)
ERIC G. ECKES (0091840)
Pinales, Stachler, Young, Burrell & Crouse Co., LPA
455 Delta Ave., Suite 105
Cincinnati, Ohio 45226
(513) 252-2750
(513) 252-2751
mpinales@pinalesstachler.com
eeckes@pinalesstachler.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served via this Court's electronic filing system on all counsel of record on this 28th day of September, 2018.

                                      **/s/ Martin S. Pinales**
                                      MARTIN S. PINALES (0024570)