United States Department of Transportation - Office of Inspector General

# Memorandum of Activity

| Case Number:<br>I16M0060500 | Reporting Office:<br>JRI-5 Chicago | Type of Activity:<br>Interview |
|---|---|---|
| Date of Activity:<br>06/01/2017 | Date Report Drafted:<br>06/05/2017 | Location of Activity:<br>2802 N 29th Ave  Hollywood FL |
| Subject of Activity:<br>SHUKLIN, ANDREY . | Activity Conducted By (Name(s)):<br>Kent Byers | Signature:<br>K B |

On June 1, 2017, Kent Byers, Special Agent (SA) and Brian Christ, SA, U.S. Department of Transportation (DOT), Office of Inspector General (OIG), Chicago, IL, interviewed Andrey Shuklin, Owner, Olympus A&S, outside of his office located at, 2802 N. 29th Ave., Hollywood, FL.  The purpose of the interview was to follow-up regarding allegations of fraud associated with Shuklin's various businesses.  Upon being informed of the interviewing agents' identities and the purpose of the interview, Shuklin voluntarily provided, in essence, the following additional information.

Shuklin advised that Eugene (Ievgen) Kariaka works in the company's Cincinnati, OH office.  Also in the Cincinnati office are Vladimir Pestereanu, who is a foreman, and two other employees. Pestereanu owns a molding company which makes it easier for him to pay taxes.  Olympus A&S pays Pestereanu through his molding company, which might be called Mold Service Group.  Shuklin believed that Pestereanu was authorized to work in the U.S.

Shuklin learned today that Phyllis Quincoces used the alias Faith Ashford.  He explained that he did not know this yesterday when he was interviewed by Agents.  He explained that during a compliance review with the Federal Motor Carrier Safety Administration (FMCSA), Quincoces used the alias of Ashford.  During the Compliance Review, FMCSA checked everything and found some mistakes.  Shuklin did not go with Quincoces to the FMCSA and did not know how she identified herself to FMCSA.

Public Moving Services (PMS) is owned by Alexis Pistun.  Pistun is on vacation in Moldova.  Shuklin believed that Pistun will be returning from Moldova in a couple of weeks.  Shuklin did not have a telephone number or contact information for Pistun.

The owner of Public Moving and Storage was Evgenia Zershcikova, who left the U.S. about six or eight months ago.  Zershcikova moved to Volgograd, Russia.  Schuklin had met Zershcikova in school when he lived in Russia.

First National Moving and Storage (FNMS) was owned by Evgneia Pros.  Schuklin thought Pros was still living in the U.S.  Schuklin knew Pros from school.  He added that Pros is the wife of one of his friends.  FMNS might have paid Pros by check, cash, or wire transfer.

Shuklin was not sure who filled out FMCSA forms.  He clarified that U.S. Relocation Systems (USRS) was under Quincoces, and believed she completed forms as his English was not as good.  He speculated that FMCSA forms might have been completed by Serghei Verlan if Quincoces did not complete them.

After National Relocation Services (NRS), Quincoces wanted to open her own business.  Quincoces, Verlan, and Shuklin then opened USRS.  USRS bank accounts were under Verlan and Shuklin, but Quincoces had access.  Quincoces was listed as the owner of USRS.  It was Quincoces' idea to open USRS.  Verlan and Shuklin still maintain the company's bank account.  He clarified that the bank account was under Olympus A&S.

President A&S was a new company opened by Shuklin, which was similar to a consulting company like Olympus A&S.  President A&S was designed to be a lead generation business.

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.

| Case Number: | Reporting Office: | Type of Activity: Discovery1-008432 |
|---|---|---|
| I16M0060500 | JRI-5 Chicago | Interview |

| Date of Activity: | Date Report Drafted: | Location of Activity: |
|---|---|---|
| 06/01/2017 | 06/05/2017 | 2802 N 29th Ave Hollywood FL |

| Subject of Activity: | Activity Conducted By (Name(s)): | Signature: |
|---|---|---|
| SHUKLIN, ANDREY . | Kent Byers | K B |

Shuklin also opened a company called Independent Van Lines for his personal mortgage. He explained that he created the company so he could get a loan from the mortgage company for his current residence.

Shuklin's wife, Tatiana, works in event planning. He could not recall the name of her company, but believed it contained the word "wonderland." Shuklin and his wife opened Moving National Solutions so they could obtain a merchant account. The business did not otherwise operate.

Shuklin reiterated that Quincoces filed FMCSA OP-1 forms, but Verlan would know if Quincoces did not file the OP-1 for a certain company. If Quincoces did not file the OP-1, Verlan might have filed it. Quincoces also filed some of the documents with Sunbiz (Florida Department of State, Division of Corporations). Other documents filed with Sunbiz might have been done by others, including possibly the company owners. Shuklin or Verlan would have asked Quincoces to make filings for fictitious names with Sunbiz. However, he did not have a specific recollection about Sunbiz filings, or how Quincoces was told to file the documents.

Shuklin agreed to provide SA Christ with contact information, including telephone numbers and email addresses for the owners of the last three companies Shuklin worked with. Specifically, Shuklin agreed to provide information for Pros, Zershcikova, and Pistun.

PMS, which started in January 2017, had online reviews associated with it for two different companies. Shuklin explained that Google had linked or compared the company to a prior unrelated company. Shuklin described the creation of a different company as "like rebranding."

"Bumping" referred to the increase in fees or costs. Shuklin advised they now have a quality control system where a person calls the customer to make sure they are moving the amount of items they are expecting.

Shuklin was asked if there were instances where a move was billed to the customer at a larger amount than it was. Specifically, he was provided an example of a customer being billed for a 2,300 cubic feet, where it was actually less as it was hauled in a truck that could only haul 1,700 cubic feet. Shuklin advised that a truck was used that could only haul 1,700 cubic feet for a 2,300 cubic foot move, there might be two trips. He was not sure of such a situation. If the movers see more items than on the estimate, they would do a revised estimate before they load the items. Shuklin was not sure of revised estimates were done after the items where already loaded. He commented that customers understand. The moving company provides discounts to the customers even if they have more items.

Nothing further

Reviewed By (Initials): A K         Date: 06/09/2017

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.